Maurice Goodman and Sara Goodman v. Commissioner.
Goodman v. Commissioner
Docket No. 56052.
United States Tax Court
T.C. Memo 1957-25; 1957 Tax Ct. Memo LEXIS 233; 16 T.C.M. (CCH) 126; T.C.M. (RIA) 57025; January 31, 1957
*233 Herman A. Benjamin, Esq., for the petitioners. Lyman G. Friedman, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency of $3,749.58 in petitioners' income tax for the calendar year 1950. Only part of this determination is in issue, the sole question being whether petitioners are entitled to a partial bad debt deduction for money disbursed by Maurice Goodman with respect to a corporation, all of whose stock he owned. Findings of Fact Maurice Goodman, hereinafter called petitioner, and Sara Goodman, husband and wife, filed their 1950 joint income tax return with the collector of internal revenue for the second district of New York. Prior to 1937 petitioner was a member of the stock exchange firm of Arnold and Company. From 1939 through 1943 he was employed by the firm of Fuller, Rodney and Company, members of the New York Stock Exchange. In 1943 he began to engage in the business in which he is presently engaged. In 1943 he was instrumental in organizing a syndicate for the purchase of the Tionesta Valley Railroad and the Susquehanna and New York Railroad. In 1944 he was instrumental in forming *234 a syndicate that gained control of the New York, Ontario and Western Railroad. In 1945 he, along with others, formed the Gibralter Investing Company, a corporation, for the purpose of buying and selling securities or companies, one of the principal acquisitions of which was the purchase of an office building at 507 Fifth Avenue, New York. In the same year he organized a syndicate that bought the Yosemite Valley Railroad. In 1946 he organized a group that bought the Colorado Springs Transit Company and in 1947 bought the Pueblo Transit Company. In 1946 he was part of a group that acquired control of the Savoy Oil Company. He also organized a group that acquired an interest in the Tishman Realty & Construction Company. In connection with this latter group, petitioner, along with others, organized the Gramatan Holding Company, the purpose of which was to build houses and develop property in Westchester County, New York. In 1951 he and another man acquired control of Liberty Fabrics Company, and petitioner organized the Carson Bus Company. Petitioner's general method of operation was to get together a group of "moneyed people" for the purpose of financing or purchasing businesses. In exchange *235 for his efforts petitioner would receive an interest in the business, sometimes a percentage of profits or sometimes a continuing interest. In 1943, petitioner, as part of a syndicate, acquired an interest in the W.B. & S. Bus Lines. By 1950 he was the sole owner of this corporation. It is located in Wilmington, North Carolina, and maintains offices in Southport, North Carolina, where its books and records are maintained. It served the area from Southport to Wilmington with a branch route to Shallottee and another to Whiteville, North Carolina. During 1950 it operated under franchises granted by the State of North Carolina for an indeterminate period. It owned and operated two 31-passenger buses, one 40-passenger bus, and a mail truck. In addition, it had a number of older buses and some maintenance and office equipment and operated on a rental basis a bus terminal in Southport and used the Union Terminal in Whiteville and Wilmington. Petitioner was president of W.B. & S. Bus Lines and as such arranged the financing of the corporation. He arranged loans for it at the Wilmington Bank. The corporation had no credit of its own, it being well known that the corporation was not in good *236 financial condition, and petitioner endorsed notes of the corporation. By August 31, 1950 petitioner had disbursed to or for the benefit of the corporation about $30,000, of which more than $25,000 was disbursed by reason of his "guaranties." On August 31, 1950 W.B. & S. Bus Lines appeared to show a cumulative deficit of approximately $37,000 which had wiped out the capital of $25,000 and left a net deficit of $12,159.81. On their return for 1950, petitioner and his wife deducted as a partially worthless debt on account of petitioner's advances to W.B. & S. Bus Lines, an amount equal to this net deficit. Respondent disallowed this deduction. After the close of 1950 petitioner advanced in excess of $15,000 for the benefit of the corporation. During 1950 petitioner was employed by and received annual salaries from the following companies: Colorado Springs Transit Com-
pany as treasurer
$ 5,000
Pueblo Transit Company as vice
president
5,000
Liberty Fabrics as vice presi-
dent
11,500
Savoy Oil Company of Tulsa,
Oklahoma as officer
3,250 (in
stock) He had an office at 9 East 38th Street, New York City, an office at Liberty Fabrics, and another office in Colorado. *237 He spent the bulk of his time in New York City. He spent 50 or 60 per cent of his time during 1950 with Liberty Fabrics, and a considerable amount of time with Savoy Oil Company. He spent approximately 1 day every 4 to 6 weeks at the offices of W.B. and S. Bus Lines. In 1950 petitioner's advances to W.B. & S. Bus Lines were not uncollectible to any determinable extent. Opinion Petitioner has claimed, and respondent disallowed, a deduction for the partial worthlessness of a debt. In such a situation the deduction "is allowable only to the extent that the taxpayer is able to demonstrate to the satisfaction of the Commissioner that, upon consideration of all of the surrounding circumstances, a part of the debt is not recoverable. Sec. 23(k)(1); [5] Regs. 111, sec. 29.23(k)-1(b). The courts have recognized that the Commissioner has a certain amount of discretion in making his determinations with respect to such deductions and that they should not be disturbed unless they are plainly arbitrary and unreasonable. H. W. Findley, 25 T.C. 311; Olympia Harbor Lumber Co. v. Commissioner, (C.A. 9, 1935) 79 Fed. (2d) 394, affirming 30 B.T.A. 114; Stranahan v. Commissioner, (C.A. 6, 1930) 42 Fed. (2d) 729, *238 affirming 14 B.T.A. 1405, certiorari denied 283 N.S. 822. [Giles E. Bullock, 26 T.C. 276, 299]" This is the less inequitable when it is recalled that a debt only partially worthless need not be deducted in a specific year. See, e.g., H. W. Findley, 25 T.C. 311, 318, affirmed per curiam (C.A. 3) 236 Fed. (2d) 959. Creation or acquisition of the debt in connection with petitioner's trade or business alone furnishes the predicate for such a deduction, compare section 23(k)(1) with section 23(k)(4), Internal Revenue Code of 1939. But we find it unnecessary to consider that issue here since petitioner has failed to prove the equally *239 necessary fact of worthlessness or its extent. For proof of this fact, petitioner relies solely upon his refreshed recollection that "On August 31, 1950, the company [the debtor] showed a cumulative deficit of $37,000 which had wiped out the capital of $25,000 and showed a remaining net deficit of $12,159.81." But what justification there is for concluding that petitioner, and he alone, must bear even part, let alone all, of the burden of this deficit is not disclosed. See W. A. Dallmeyer, 14 T.C. 1282, 1292. There is no evidence from which an independent judgment of value, of existing assets and liabilities, or of ultimate collectibility can be formulated. See American Trust Co., 21 B.T.A. 30; Isadore Schuman, 20 B.T.A. 1167. If there were evidence of bankruptcy, which there is not, it might be some indication of the worthlessness of at least a part of an unsecured and unpreferred debt. See Regulations 111, section 29.23(k)-1(b). But even so, the record is silent on petitioner's status relative to other creditors, as well as to any security or preference. Finally, this statement of the debtor's position applies to a date 4 months prior to *240 the end of the year before us and subsequently petitioner advanced in excess of $15,000 for the benefit of this debtor. Whether this reflects upon the condition of the debtor or upon the character of the advances we need not say. Petitioner's counsel was from the outset placed on notice as to the extent of the burden to be carried and it cannot be assumed that failure to make more convincing proof was an oversight. Without more than the present record shows, we cannot disturb respondent's determination. Decision will be entered for the respondent. Footnotes
5. SEC. 23. DEDUCTIONS FROM GROSS INCOME. "In computing net income there shall be allowed as deductions: * * *
"(k) Bad Debts. - "(1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *"↩